IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| BERNARD MONTEZ MIXON ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | 2:06-CV-342-MHT |
| STATE OF ALABAMA, ET AL. ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

## SUPPLEMENTAL SPECIAL REPORT OF DEFENDANTS MOSLEY, HULETT, CANTY AND PRYOR

Come now the Defendants Gwendolyn Mosley, Lewis Hulett, Steve Canty and John Pryor, by and through counsel, to file this Supplemental Special Report in accordance with the order of this Honorable Court entered on 23 July 2007.

### PARTIES

1. The plaintiff, Bernard Mixon, 219783, is presently incarcerated in the Easterling Correctional Facility, Clio, Alabama of the Alabama Department of Corrections (DOC) and was so incarcerated at all times pertinent to his complaint.

2. Defendant Gwendolyn Mosley is employed by the Alabama Department of Corrections as a Correctional Warden III at the Easterling CF.

3. Defendant Lewis Hulett is employed by DOC as a Correctional Officer II at Easterling CF.

4. Defendant Steven Canty is employed by DOC as a Correctional Officer I at Easterling CF.

5. Defendant John Pryor is employed by DOC as a Correctional Officer I at Easterling CF.

## PLAINTIFF'S CLAIMS

The plaintiff alleges that he was subjected to "assault and battery" by the defendants on two days, 10 January 2006 and 27 May 2005, which the defendants interpret as an allegation of the use of excessive force. He states that defendant Canty beat the plaintiff in the head and kicked him in the face and that "prison administrators" were indifferent to the brutal behavior directed toward inmates. The plaintiff further alleges that defendant Pryor hit him in the hand and that the resulting cut required stitches.

## DEFENDANTS' RESPONSE TO CLAIMS

1. Defendants deny the use of excessive force.
2. Defendants deny that they were deliberately indifferent to the alleged use of excessive force against the plaintiff.
3. Defendants assert that the Correctional Officers only used the necessary amount of force against plaintiff in good faith to restore order and maintain discipline.
4. The Plaintiff failed to state a claim upon which relief can be granted pursuant to 42 USC §1983 or any other cause of action.
5. Defendants assert that there is no evidence to support plaintiff's claims.
6. Defendants assert that the plaintiff suffered only de minimus injuries.
7. Defendants assert Plaintiff has failed to show there is any genuine issue of material fact in this case.

8. Defendants deny that any of Plaintiff's constitutional rights have been violated.

9. Defendants deny all material allegations not expressly admitted herein and demands strict proof thereof.

10. Defendants assert the defenses of sovereign immunity and qualified immunity.

11. Under 42 U.S.C. 1983 respondeat superior is not available to find an individual liable.

12. Defendants assert immunity pursuant to Article 1, Section 14 of the Constitution of Alabama 1901 and the Eleventh Amendment to the United States Constitution.

13. Defendants assert State discretionary immunity.

14. Defendant asserts immunity pursuant to § 6-5-338 of the Code of Alabama.

## DEFENSE EXHIBITS[1]

1. Defense Exhibit 1 consists of the affidavit of defendant Gwendolyn Mosley to which she attached two exhibits to her affidavit, a copy of all disciplinaries given to the plaintiff at Easterling CF as well as a note sent by the plaintiff to the defendant Mosley.

2. Defense Exhibit 2 consists of a second affidavit of Gwendolyn Mosley in which she addresses incidents of 27 May 2005.

3. Defense Exhibit 3 consists of the affidavit of defendant Lewis Hullet.

4. Defense Exhibit 4 consists of the affidavit of defendant Steven Canty.

5. Defense Exhibit 5 consists of the affidavit of defendant John Pryor.

---

[1] Defense Exhibits 1-8 were submitted with Doc 9 (Special Report) and are incorporated by reference.

6. Defense Exhibit 6 consists of the DOC Incident Report ECF-06-055 for the events of 10 January 2006.

7. Defense Exhibit 7 consists of the DOC Incident Report ECF-05-662 for the events of 27 May 2005.

8. Defense Exhibit 8 consists of the DOC Disciplinary Progress Notes for the period 2 March 2005 through 3 May 2006, including Psychiatric Progress Notes as well as other medical assessments pertinent thereto.

## STATEMENT OF FACTS

The plaintiff, Bernard Mixon, is a mentally ill inmate at the Easterling Correctional Facility with a penchant for acting out. Mixon has been diagnosed as "Depressive D/O NOS" and "Generalized Anxiety D/O." (DE 8, Psychiatric Progress Notes dated 13 April 2005, Psychiatric Progress Notes dated 16 May 2005). At times he has auditory hallucinations (hears voices) and suffers from paranoia. (DE 8, entry for 3 May 2006). He admits to having both suicidal and homicidal thoughts, stating on 13 January 2006, in the aftermath of the events of 10 January 2006, that "I am not having any suicidal thoughts [now] but I do have some homicidal thoughts about some of the officers in seg." (DE 8, Entry for 13 January 2006). At times he has stated that he wanted to hurt someone. On 16 May 2005, the plaintiff told Dr. Baneree that "I still feel suicidal. I feel like I will hurt myself or hurt somebody else." (DE 8, Psychiatric Progress Notes dated 16 May 2005).

Mixon has been incarcerated at Easterling CF since 9 August 2004 where he constantly violates rules and procedures as well as committing frequent assaults upon DOC employees. Warden Mosley has investigated the plaintiff's allegations for the dates

4

in his complaint, 10 January 2006 and 27 May 2005, finding in each instance that there was no evidence to support Mixon's complaint. (DE 1, 2).

On 27 May 2005, the plaintiff refused to obey orders to leave his cell, then barricaded himself in the cell, causing a disturbance sufficiently serious enough to force Warden Mosley to order a cell extraction during which the plaintiff assaulted a correctional officer by spitting on him.

In the narrative summary to the Institutional Incident Report, ECF-05-662 (DE 7) Correctional Officer John Ivey stated:

> On May 27, 2005, Officer John Ivey, Jr. was assigned as a Segregation Unit Rover. At approximately 9:30 AM, Officer Ivey ordered Inmate Bernard Mixon, B/219783, to pack up his property so that he (Inmate Mixon) could be processed into Disciplinary Segregation. In mate Mixon stated to Officer Ivey, I'm not going to do a fucking thing." Officer Ivey ordered Inmate Mixon again to pack up his property and get ready to move to Disciplinary Segregation. Inmate Mixon stated to Officer Ivey, "I ain't going nowhere!" At approximately 9:31 A.M., Officer Ivey reported the incident to Sgt Nathaniel Lawson. At Approximately 9:37 A.M., Lt. Mary Lee, Sgt Phelix Woods, and Sgt Lawson entered the Segreation Unit. Lt. Lee and Sgt Lawson attempted to talk with Inmate Mixon. In mate Mixon began using profanity toward Lt. Lee and refused to comply and stated, "I'm not coming no motherfucking where. If ya'll motherfuckers want me then bring y'alls ass in here and get me." At approximately 9:45 A.M., Sgt Lawson notified Captain Kenneth Sconyers and Warden III Gwendolyn Mosley of the incident. Warden Mosley advised Sgt Lawson to have a member of the Mental Health Staff to report to the Segregation Unit and talk with Inmate Mixon. At approximately 10:07 A.M., Mental Health Nurse, Becky Flowers, entered the Segregation Unit and attempted to talk with Inmate Mixon. Inmate Mixon would not respond to Nurse Flowers. At approximately 10:15 A.M., Sgt Lawson advised Captain Sconyers that Inmate Mixon would not respond to Nurse Flowers. Captain Sconyers advised Sgt Lawson that he was en route to the Segregation Unit. At approximately

10:26 A.M., Captain Sconyers and Warden Mosley entered the Segregation Unit. Inmate Mixon had barricaded his cell door with his bed and placed his mattress against his cell door, so that no one could see inside of his cell. Captain Sconyers attempted to talk with Inmate Mixon. Inmate Mixon bgan using profanity toward Captain Sconyers. At approximately 10:33 A M., Warden Mosley ordered Sgt. Lawson to proceed with a cell extraction, because she could not see inside of Inmate Mixon's cell, and Warden Mosley was afraid that Inmate Mixon might be causing harm to himself. Officer Ivey pushed Inmate Mixon's mattress away from his cell door. Sgt. Lawson ordered Inmate Mixon to report to his cell door to be handcuffed. Inmate Mixon refused. At approximately 10:35 AM., Sgt. Lawson sprayed a one second burst of Freeze Plus P Chemical Agent into inmate Mixon's facial area. Officer Ivey ordered Inmate Mixon to report to his cell door to be handcuffed. Inmate Mixon complied with the order. Officer Ivey placed handcuffs on Inmate Mixon to the rear. Sgt. Lawson instructed the Segregation Unit Cubicle Officer, Officer Lloyd Conner, to open Inmate Mixon's cell door. Sgt. Lawson ordered Inmate Mixon to kneel down so that leg irons could be placed on him. Inmate Mixon did not comply with the order. Officer Daron Fayson, Segregation Unit Rover, placed Inmate Mixon on the floor using the stun shield, but did not activate the current. Officer Dexter Baldwin, Segregation Unit Rover, and Officer Steven Canty held Inmate Mixon by both legs while Officer Ivey placed leg irons on Inmate Mixon. Inmate Mixon was escorted to the Segregation Unit Lobby and placed on the floor. Inmate Mixon became very loud and hostile toward Officer Canty. Inmate Mixon spat on Officer Canty and attempted to kick him. (Officer Canty grasped Inmate Mixon the back of his head and shoulder area and sat down on Inmate Mixon's back. Officer Fayson grasped Inmate Mixon by both legs. Inmate Mixon pulled away from Officer Canty's grasp and struck his head on the corner of the wall, creating a laceration above Inmate Mixon's left eye. At approximately 10:47 AM., Nurses Sharon McKinnon and Susie Bush entered the Segregation Unit. Nurse McKinnon cleaned Inmate Mixon's laceration and advised Captain Sconyers that Inmate Mixon needed to be taken to the Health Care Unit to be decontaminated and his laceration checked thoroughly. At approximately 11:05 AM., Sgt. Lawson, Officer Ivey, arid Officer McKinnis escorted Inmate Mixon to the Health Care Unit. Nurse

McKinnon decontaminated Inmate Mixon and attempted to place steri-strips on the laceration above Inmate Mixon's left eye. Inmate Mixon refused to let Nurse McKinnon put steri-strips on his laceration. Inmate Mixon stated, 'I just want it to heal on its own." At approximately 11:25 AM., Inmate Mixon was released from the Health Care Unit to Sgt. Lawson and Officer McKinnis. Officer Ivey was examined by Nurse Kay Wilson, released from the Health Care Unit at approximately 11:29 A.M., and resumed his tour of duty see attached medical report). At approximately 11:30 A.M., Sgt. Lawson and Officer McKinnis began to escort inmate Mixon back to the Segregation Unit. Inmate Mixon walked from the middle of the sidewalk to the grass and laid down. Sgt. Lawson ordered inmate Mixon to get up. Inmate Mixon continued to lie in the grass. Sgt con the Health Care Unit by radio and requested for a nurse to report to the back side of the Visitation Building and examine Inmate Mixon. At approximately 11:30 AM., Nurse Ruthie Teal examined Inmate Mixon (see attached medical report). At approximately 11:35 AM., Nurse Teal released Mixon to Sgt. Lawson. Sgt. Lawson ordered Inmate Mixon to get up. Inmate Mixon complied with the order. Sgt. Lawson, Officer McKinnis, and Captain Sconyers escorted Inmate Mixon to the Segregation Unit. Sgt. Woods, Sgt. Lawson, Officer Derek Portwood, Officer McKinnis, and Officer Ivey escorted Inmate Mixon to Disciplinary Segregation, and placed him in cell #5A-05. After Inmate Mixon was secured in cell #5 A-OS, Inmate Mixon stated to Sgt. Woods, "I'm going to kill your motherfucking ass, bitch! You are a bitch ass nigga and you can suck my dick, bitch!' Sgt. Woods verbally reprimanded Inmate Mixon for his negative behavior. Inmate Mixon remained in Disciplinary Segregation in cell 5A-05, pending disciplinary action for rule violations #56 - Failure to obey a direct order of an ADOC official, #57.-Insubordination, #44-Threats, and #29-Assualt on an ADOC official. At approximately 11:49 A.M., Officer Baldwin entered the Health Care Link and was examined by Nurse McKinnon. At approximately 11:50 AM., Officer Canty was examined by Nurse Bush. At approximately 11:55 AM., Officer Fayson entered the Health Care Unit and was examined by Nurse Bush.  At approximately 11:55 AM., Officers Baldwin and Canty were released from the Health Care Unit. At approximately 12:00 P.M., Officer Fayson was released from the Health Care Unit (see attached medical reports) At approximately 1:00 P.M.. Sgt.

>Lawson faxed a Central Communications Incident Report to Staton Correctional Facility (see attached Central Communications Incident Report). Lt. Willie Bryant conducted a Use of Force investigation of the incident (see attached Use of Force investigation form)

It should be noted that the laceration to the head that is one of the injuries that is the basis of the complaint was caused by the plaintiff's struggles, not by a blow or kick administered by an officer.

On 10 January 2006, the plaintiff started an altercation with defendant Pryor over the retrieval of a food tray, eventually injuring defendant Hulett by biting his hand. This fracas too was the subject of an Institutional Incident Report, ECF-06-055, (DE 6)in which Correctional Officer Pryor stated in the narrative summary the following:

>On January 10, 2006, Officer John Pryor was assigned as a Segregation Rover. At approximately 3:40 PM, Officer Pryor began picking up foods trays on A-side of the Segregation Unit. Officer Pryor approached Inmate Bernard Mixon's, B/219783, cell, 5A-01. Officer Pryor opened the tray door to retrieve the food tray. Officer Pryor removed the food tray and attempted to close the tray door. Inmate Mixon laid his arm on the tray door and would not allow Officer Pryor to close the tray door. Officer Pryor ordered Inmate Mixon several times to remove his arm. Inmate Mixon did not comply with the orders given. Officer Pryor reached towards the tray door to close it, when Inmate Mixon attempted to grab Officer Pryor's arm. Inmate Mixon missed Officer Pryor's arm, and his right hand hit somewhere on the tray door, causing a cut to his hand. At approximately 3:42 PM, Officer Pryor reported the incident to Sgt. Lewis Hulett. Sgt. Hulett and Officer Lewis Scott approached cell 5A-01. Sgt. Hulett questioned Inmate Mixon about the incident. Inmate Mixon reported that Officer Pryor cut his hand with the food tray. Sgt. Hulett telephoned Sgt. Richard Hager and requested assistance to escort Inmate Mixon to the Health Care Unit to be examined. At approximately 3:45 PM, Sgt. Hulett and Sgt. Hager escorted Inmate Mixon in the Health Care Unit. At approximately 3:50 PM, Inmate Mixon was examined

by Nurse Cynthia Garcia (see attached medical chart). At approximately 4:20 PM, Inmate Mixon was released back to Sgt. Hulett and Sgt. Hager. Inmate Mixon remained in the Health Care Unit Observation Cell pending disciplinary action for RJV#29-Assault on an ALDOC official and RIV#56-Failure to obey a direct order of an ALDOC official.

Addendum:

On January 10, 2006, Sgt. Lewis Hulett was assigned as he Segregation Commander. At approximately 3:42 PM, Officer John Pryor, Segregation Rover, reported to Sgt. Hulett that Inmate Bernard Mixon, B/219783, had cut his right hand on the tray door of the cell, when he attempted to grasp his ( Pryor's) arm. At approximately 3:45 PM, Sgt. Hulett and Sgt. Richard Hager escorted Inmate Mixon to the Health Care Unit to be examined. At approximately 3:50 PM, Inmate Mixon was examined and treated by Nurse Cynthia Garcia (see attached medical chart). Inmate Mixon began to get upset because the Nurse Garcia would not stitch his cut. Nurse Garcia advised Inmate Mixon that she could not stitch his cut. Inmate Mixon stated, "I want to go on suicide watch." At approximately 4:20 PM, Inmate Mixon was released back to Sgt. Hulett and Sgt. Hager. Sgt. Hulett, Sgt. Hager, and HCU Rover, Officer William Davis, placed Inmate Mixon in the Health Care Unit Observation Cell. Sgt. Hulett telephoned Mr. Brian Mitchell. Psychologist, and advised him of the incident. Mr. Mitchell entered the Health Care Unit and talked with Inmate Mixon. Inmate Mixon reported to Mr. Mitchell that he did not want to kill himself, he wanted to see Lt. D.C. Wilson. Mr. Mitchell advised Sgt. Hulett that he did not need to see Inmate Mixon any longer. Sgt. Hulett instructed Officer Davis to open the door to the Observation Cell. Sgt. Hulett entered the cell and ordered Inmate Mixon to exit the cell. Inmate Mixon stated, "I'm not going no fucking where." Sgt. Hulett ordered Inmate Mixon again to exit the cell. Inmate Mixon refused to move. Sgt. Hulett grasped Inmate Mixon's left arm and Sgt. Hager grasped Inmate Mixon's right arm and physically removed Inmate Mixon from the cell. Once on the sidewalk outside the Health Care Unit, Sgt. Hulett and Sgt. Hager released their grasp of Inmate Mixon's arms. Inmate Mixon observed Capt..Jeffery Knox walking by the Gym. Inmate Mixon yelled, "Capt. Knox, I need to see you," and began to walk towards Capt. Knox. Officer Matthew Campbell, Pill Call Officer, grasped Inmate Mixon's right arm and ordered him

to stop. Inmate Mixon continued towards Capt. Knox. Sgt. Hulett grasped Inmate Mixon's left arm to assist Officer Campbell. Inmate Mixon turned towards Sgt. Hulett and attempted to spit on him. Sgt. Hulett placed his left hand behind Inmate Mixon's head and attempted to place Inmate Mixon on the ground. Sgt. Hulett's hand slipped off Inmate Mixon's head. Sgt. Hulett attempted to place his left hand behind Inmate Mixon's head again, when Sgt. Hulett's thumb entered Inmate Mixon's mouth. Inmate Mixon began to vigorously bite down on Sgt. Hulett's thumb. Sgt. Hulett ordered Inmate Mixon several times to release his thumb. Inmate Mixon continued to bit down on Sgt. Hulett's thumb. Sgt. Hulett and Officer Campbell placed Inmate Mixon on the ground at which time Inmate Mixon released his grasp on Sgt. Hulett's thumb. Capt. Knox approached the incident and instructed Sgt. lHulett and Officer Campbell to release Inmate Mixon and let him up. Sgt. Hulett and Officer Campbell did as instructed. Officer Campbell and Sgt. Hager escorted Inmate Mixon back into the Health Care Unit to be examined. Sgt. Hulett then entered the Health Care Unit. At approximately 4:20 PM, Sgt. Hulett was examined and treated by Nurse Jessica Ivey and was released to report to the Emergency Room at approximately 4:25 PM. At approximately 4:20 PM, Officer Campbell was examined by Nurse Cynthia Wambles and released back to duty at approximately 4:30 PM. At approximately 4:30 PM, Inmate Mixon was examined by Nurse Garcia (see attached medical charts). At approximately 4:32 PM Sgt. Hulett reported the incident to Capt. Kenneth Sconyers. Inmate Mixon reported to Nurse Garcia that he wanted to go on Suicide Watch. Dr. Charles Nevels, Psychiatrist, was contacted and advised of the incident. Dr. Nevels ordered that Inmate Mixon be placed on Suicide Watch in the Health Care Unit Observation Cell. Dr. Nevels orders were that Inmate Mixon have no personal property, no sharp objects and sack lunches only. Inmate Mixon was to have a black smock, suicide blanket and mattress. Sgt. Hulett completed a First Report of Injury and exited the Institution at approximately 5:45 PM. en route to Dale Medical Center Emergency Room, Ozark Alabama, where he was treated (see attached copy the First Report of Injury). On January 11, 2006, Sgt. Hulett reported to duty. Disciplinary action is pending on Inmate Mixon for R/V#29-Assault on an ALDOC official. A Use of Force Investigation was

> conducted by Lt. Mary Lee (see attached Use of Force Investigation Sheet). See attached statements.

Again, it should be noted that the injury alleged by the plaintiff, a cut to the hand, to have been caused by defendant Pryor was in fact caused by the plaintiff's own violent action of trying to grab defendant Pryor but instead smashing his hand against the metal.

## **SUMMARY JUDGMENT STANDARD**

Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of facts become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [Citation omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.
> 898 F.2d at 1532.

## ARGUMENT

In the complaint, the plaintiff asserts that he was subjected to "assault and battery" by the defendants. By assault and battery, it appears that the plaintiff is raising the issue of excessive force rather than a random attack by a correctional officer.

Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers,* 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973)); *see also Hudson v. McMillian,* 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson,* at 7-8, 112 S.Ct. 995; *see also Whitley,* 475 U.S. at 321, 106 S.Ct. 1078; *Harris v. Chapman,* 97 F.3d 499, 505 (11th Cir.1996). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that

it occur." *Whitley,* 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson,* 481 F.2d at 1033). Moreover, an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held personally liable for his nonfeasance. *See Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1560 (11th Cir.1993), as amended, 14 F.3d 583 (11th Cir.1994) ("A police officer has a duty to intervene when another officer uses excessive force."); *Byrd v. Clark,* 783 F.2d 1002, 1007 (11th Cir.1986) ("if a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983"); *Fundiller v. City of Cooper City,* 777 F.2d 1436, 1442 (11th Cir.1985) ("an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance"); *Harris v. Chanclor,* 537 F.2d 203, 206 (5th Cir.1976) ("a supervisory officer is liable under [Section] 1983 if he refuses to intervene where his subordinates are beating an inmate in his presence").

The plaintiff is mentally ill, a disturbed man with violent tendencies who constantly provokes and assaults correctional officers. Given the circumstances of the incidents on both 27 May 2005 and 10 January 2006, it is readily apparent that the defendants acted in a manner to avoid the use of force if possible, then attempted to use the minimum force necessary to maintain order and discipline. Yes, the plaintiff received de minimus injuries but in each case the infliction of the injury was by the plaintiff's own struggles, not from any blow administered by the correctional officers. Given his mental state, it is simply a wonder that the officers were able to act so professionally and to

accomplish their mission on each occasion without unleashing an angry violence upon the plaintiff.

## IMMUNITIES

The Plaintiff sued Defendants individually and in their official capacity, seeking compensatory damages and injunctive relief. The Defendants raised the defenses of sovereign immunity pursuant to the Eleventh Amendment and Article I, § 14, Alabama Constitution of 1901 as well as Qualified Immunity and State Agent Immunity.

The Eleventh Amendment unequivocally bars suits for money damages against a state by the citizens of that state, *see Florida Association of Rehabilitation Facilities, Inc. v. State of Florida Department of Health and Rehabilitative Services,* 225 F.3d 1208, 1214, 1219 (11th Cir.2000) (citing *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)), unless the state waives its Eleventh Amendment immunity or Congress abrogates said immunity. *See Carr v. City of Florence, Ala.,* 916 F.2d 1521, 1524 (11th Cir.1990). Congress has not abrogated Eleventh Amendment immunity in § 1983 cases, nor has the State of Alabama consented to suit. *See id.* at 1525. Eleventh Amendment immunity also extends to state officials sued in their official capacities when, for all practical purposes, " 'the state is the real, substantial party in interest.' " *Id.* at 1524 (quoting *Pennhurst State School and Hosp. v. Halderman,* 465 U.S. 89, 101, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)). Where an award of damages would be paid by the state, "the state is considered the real party in interest." *Id.* These state defendant are state officials and, thus, by virtue of the Eleventh Amendment are shielded from suit as to all monetary claims asserted against them in their official capacity. Second, because a suit

14

for money damages against a state official in his or her official capacity "is not a suit against the official but rather is a suit against the official's office," Defendants also are not considered a "person" within the meaning of 42 U.S.C. § 1983. *Will v. Michigan Department of State Police,* 491 U.S. 58, 70-71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).

Sued in their individual capacity also, the Defendants assert that they are entitled to the protection of qualified immunity. Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Dalrymple v. Reno,* 334 F.3d 991, 994 (11th Cir.2003)(quoting *Hope v. Pelzer,* 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002)). In determining whether qualified immunity is appropriate in a given case, "[t]he court must first ask the threshold question whether the facts alleged, taken in the light most favorable to the plaintiffs, show that the government official's conduct violated a constitutional right." *Dalrymple,* 334 F.3d at 995 (citing *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).

The Defendants recognize that the law of the 11th Circuit precludes a defense of qualified immunity in cases alleging excessive force in violation of the Eighth Amendment because the use of force "maliciously and sadistically to cause harm" is clearly established to be a constitutional violation. *Skrtich v. Thornton,* 280 F.3d 1295, 1301 (11th Cir.2002) citing *Hudson v. McMillian,* 503 U.S. 1 (1992), and *Whitley v. Albers,* 475 U.S. 312 (1986). However, the Defendants do not wish to waive this defense because under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not]

maliciously and sadistically to cause harm." *Whitley v. Albers,* 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973)); *see also Hudson v. McMillian,* 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). If, indeed, there are instances where force can be used lawfully, then the preclusion of the defense whenever inmates whelp over their treatment is not proper and the Defendants wish to assert Qualified Immunity in the event that the state of the law changes.

The Defendants assert that any state law claims against them in their official capacities are barred by Article I, § 14 of the Alabama Code of 1901.

The state Defendants also assert State-Agent Immunity to any state law claims in their individual capacities. In analyzing cases in which a defendant presents the trial court with a State-agent-immunity claim on a summary-judgment motion, this Court applies a burden-shifting analysis based on the evidence presented to the trial court. *Ex parte Wood,* 852 So.2d at 709 (citing *Ryan v. Hayes,* 831 So.2d 21, 28 (Ala.2002)). In order to establish State-agent immunity, the party seeking to assert the defense must present evidence indicating that the claims asserted against him or her arise from the performance of a discretionary act. *Ex parte Wood,* 852 So.2d at 709 (quoting *Ex parte Alabama Dep't of Transp.,* 764 So.2d 1263, 1268-69 (Ala.2000)). The Alabama Supreme Court restated the standard for determining whether an act is discretionary for purposes of determining the applicability of State-agent immunity in *Ex parte Cranman,* 792 So.2d 392 (Ala.2000). If the defendant establishes that the conduct made the basis of the claim against him or her falls within a category of conduct giving rise to State-agent immunity, then the burden shifts to the plaintiff to show that the defendant acted in a manner that

16

precludes the application of State-agent immunity. *Ex parte Wood,* 852 So.2d at 709 (quoting *Ryan v. Hayes,* 831 So.2d at 28); *see also Cranman,* 792 So.2d at 405 ( "a State agent *shall not* be immune from civil liability in his or her personal capacity ... when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law").

## CONCLUSION

There are no genuine issues of material fact, and the Defendants are entitled to judgment as a matter of law. WHEREFORE, the Defendants respectfully request that this Honorable Court dismiss the claims against them.

    Respectfully submitted,

    TROY KING
    Attorney General

    /s/ *Jack Wallace, Jr.*
    Jack Wallace, Jr.
    Assistant Attorney General

ADDRESS OF COUNSEL:

Office of the Attorney General
11 South Union Street
Montgomery, AL 36130
(334) 242-7555
(334) 242-2433 – fax

**CERTIFICATE OF SERVICE**

I hereby certify that I have, this the 25th day of July, 2007, served a copy of the foregoing upon the Plaintiff by placing same in the United States Mail, postage prepaid and properly addressed as follows:

Bernard Montez Mixon, AIS 219783
Donaldson Correctional Facility
100 Warrior Lane
Bessemer, AL 35023

/s/ *Jack Wallace, Jr.*
Jack Wallace, Jr.
Assistant Attorney General