IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BERNARD MONTEZ MIXON, #219783, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:06-CV-342-MHT |
| | ) | [WO] |
| | ) | |
| GWENDOLYN MOSLEY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This case is before the court on a 42 U.S.C. § 1983 complaint filed by Bernard

Montez Mixon ["Mixon"], a state inmate who suffers from various mental impairments,

presents a constant source of disruption to institutional security and routinely violates

disciplinary rules.[1]   In this complaint, Mixon alleges constitutional violations related to

three incidents regarding the use of force by correctional officials during his confinement

at the Easterling Correctional Facility ["Easterling"].  Mixon names Gwendolyn Mosley,

the warden of Easterling, and Steven B. Canty, Lewis Hulett and John Pryor, correctional

officers at such facility, as defendants in this cause of action.  Mixon seeks monetary

damages for the alleged violations of his constitutional rights. *Plaintiff's Complaint - Court*

---

[1] The mental health records before the court establish that Mixon suffers from depression, generalized anxiety, mood disorder, auditory hallucinations, paranoia, psychosis and both suicidal and homicidal tendencies. *Defendants' Exhibit C to the June 27, 2006 Supplemental Special Report - Court Doc. No. 17-4* at 8 and 24.  The evidentiary materials further demonstrate an extensive disciplinary record for Mixon including several assaults on correctional officials, numerous failures to obey direct orders and many acts of insubordination. *Defendants' Exhibit 1 to the May 30, 2006 Special Report - Court Doc. No. 9-2* at 3-42.

*Doc. No. 1* at 4.  He also requests that criminal charges be initiated against the defendants for their actions.  *Id.*

The defendants filed a special report, supplemental special reports and supporting evidentiary materials addressing Mixon's claims for relief.  Pursuant to the orders entered herein, the court deems it appropriate to treat these reports as a motion for summary judgment.  *Order of May 31, 2006 - Court Doc. No. 10*.  Thus, this case is now pending on the defendants' motion for summary judgment.  Upon consideration of this motion, the evidentiary materials filed in support thereof and the plaintiff's responses in opposition to the motion, the court concludes that the defendants' motion for summary judgment is due to be granted.

## I.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.").[2]  The party moving for summary

---

[2]Effective December 1, 2007, "[t]he language of Rule 56 [was] amended ... to make the rule[] more easily understood and to make style and terminology consistent throughout the rules.  These changes ... are stylistic

judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine issue of material fact. Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine issue material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial."). A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

In civil actions filed by inmates, federal courts

---

only." Fed.R.Civ.P. 56 Advisory Committee Notes. Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior rule remain equally applicable to the current rule.

> must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted).  Consequently, to survive the defendants' properly supported motion for summary judgment, Mixon is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e)(1), *Federal Rules of Civil Procedure*.  "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted."  *Id*. at 249-250.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)."  *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990).  Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment.  *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant

4

of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome

of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts....  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine issue of material fact.  *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.  In

6

this case, Mixon fails to demonstrate a requisite genuine issue of material fact in order to preclude summary judgment. *Matsushita*, *supra*.

## II.  DISCUSSION

### A.  The Excessive Force Claims

Mixon references the following three separate incidents in which he contends that excessive force was used against him by correctional officers during his confinement at Easterling: (i) defendant Canty hit him in the head and face during a cell extraction conducted on May 27, 2005;  (ii) defendant Pryor struck him with a food tray on January 10, 2006 at approximately 3:40 p.m.; and (iii) defendant Hulett pushed his head to the ground at approximately 4:20 p.m. on January 10, 2006 while escorting Mixon from the health care unit.  The defendants deny Mixon's allegations and maintain that the only force used against Mixon was the amount of force necessary under the circumstances to maintain discipline and gain control of an unruly inmate. The objective evidentiary materials filed herein support this assertion.

Although in his responses to the defendants' reports Mixon asserts that nurse Flowers and inmate Quantez Kirkland witnessed the cell extraction, other inmates observed the food tray incident, and officers Hager and Campbell viewed the force used in the final altercation, Mixon presents no statements or affidavits from these purported witnesses. The evidentiary materials submitted by the defendants contain an affidavit from nurse Flowers in which she denies witnessing the use of excessive force against Mixon and statements

from the identified correctional officer witnesses that directly refute the allegations made

by Mixon.

The Eighth Amendment prohibits the infliction of cruel and unusual punishments

and this "proscription ... governs prison officials' use of force against convicted inmates."

*Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1990).

> Under the Eighth Amendment, force is deemed legitimate in a custodial
> setting as long as it is applied "in a good faith effort to maintain or restore
> discipline [and not] maliciously and sadistically to cause harm." *Whitley v.
> Albers,* 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)
> (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2nd Cir.1973)); *see also
> Hudson v. McMillian,* 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).
> To determine if an application of force was applied maliciously and
> sadistically to cause harm, a variety of factors are considered including: "the
> need for the application of force, the relationship between that need and the
> amount of force used, the threat reasonably perceived by the responsible
> officials, and any efforts made to temper the severity of a forceful response."
> *Hudson,* at 7-8, 112 S.Ct. 995; *see also Whitley,* 475 U.S. at 321, 106 S.Ct.
> 1078; *Harris v. Chapman,* 97 F.3d 499, 505 (11th Cir.1996).    From
> consideration of such factors, "inferences may be drawn as to whether the use
> of force could plausibly have been thought necessary, or instead evinced such
> wantonness with respect to the unjustified infliction of harm as is tantamount
> to a knowing willingness that it occur." *Whitley,* 475 U.S. at 321, 106 S.Ct.
> 1078 (quoting *Johnson,* 481 F.2d at 1033).   Moreover, an officer who is
> present at the scene and who fails to take reasonable steps to protect the
> victim of another officer's use of excessive force can be held personally
> liable for his nonfeasance.... *Harris v. Chanclor,* 537 F.2d 203, 206 (5th Cir.
> 1976) ("a supervisory officer is liable under [Section] 1983 if he refuses to
> intervene where his subordinates are beating an inmate in his presence").

*Skrtich v. Thornton*, 280 F.3d 1295, 1300-1301 (11th Cir. 2002) (footnote omitted);

*Campbell*, 169 F.3d 1374 ("To establish an Eighth Amendment claim for excessive force,

... Plaintiff must meet [a heightened] intent requirement ... [and] must prove that 'force was

applied ... maliciously and sadistically for the very purpose of causing harm.' *Whitley*, 475 U.S. at 320-21, 106 S.Ct. 1078 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973).... [F]orce does not violate the Eighth Amendment merely because it is unreasonable or unnecessary.").  Another relevant factor in ascertaining whether correctional officers used force "maliciously and sadistically" is the extent of the injury suffered by the inmate. *Campbell*, 169 F.3d at 1375.

After thorough review of the facts and viewing such in a light most favorable to Mixon, it is clear that the defendants did not violate Mixon's constitutional rights. Specifically, the undisputed objective evidence demonstrates that the defendants did not use force "maliciously and sadistically" for the purpose of causing harm to Mixon.

1.  The May 27, 2005 Incident.  On May 27, 2005, Mixon was confined in the segregation unit at Easterling.  At approximately 9:30 a.m., a correctional officer ordered Mixon to pack his property for transfer to disciplinary segregation. *Defendants' Exhibit 7 to the May 30, 2006 Special Report (Institutional Incident Report ECF-05-662) - Court Doc. No. 9-8* at 1.  Mixon adamantly and profanely refused this order.  The officer again ordered Mixon to gather his belongings in preparation for transfer to disciplinary segregation.   Mixon again refused this order and the officer reported Mixon's non-compliant behavior to Sgt. Nathaniel Lawson.  The following then transpired:

> At approximately 9:37 A.M., Lt. Mary Lee, Sgt. Phelix Woods, and Sgt. Lawson entered the Segregation Unit.  Lt. Lee and Sgt. Lawson attempted to talk with Inmate Mixon.  Inmate Mixon began using profanity toward Lt. Lee and Sgt. Lawson.  Sgt. Lawson ordered Inmate Mixon to report to his cell

door so that he could be handcuffed.  Inmate Mixon refused to comply and stated, "I'm not coming no [expletive] where.  If y'all [expletive] want me, then bring y'all's ass in here and get me."  At approximately 9:45 A.M., Sgt. Lawson notified Captain Kenneth Sconyers and Warden ... Gwendolyn Mosley of the incident.  Warden Mosley advised Sgt. Lawson to have a member of the Mental Health Staff to ... talk with Inmate Mixon.  At approximately 10:07 A.M., Mental Health Nurse Becky Flowers, entered the Segregation Unit and attempted to talk with Inmate Mixon.  Inmate Mixon would not respond to Nurse Flowers....  At approximately 10:26 A.M., Captain Sconyers and Warden Mosley entered the Segregation Unit.  Inmate Mixon had barricaded his cell door with his bed and placed his mattress against his cell door, so that no one cold see inside of his cell.  Captain Sconyers attempted to talk with Inmate Mixon.  Inmate Mixon began using profanity toward Captain Sconyers.  At approximately 10:33 A.M., Warden Mosley ordered Sgt. Lawson to proceed with a cell extraction, because she could not see inside of Inmate Mixon's cell, and Warden Mosley was afraid that Inmate Mixon might be causing harm to himself.  Officer Ivey pushed Inmate Mixon's mattress away from his cell door.  Sgt. Lawson ordered Inmate Mixon to report to his cell door to be handcuffed.  Inmate Mixon refused.  At approximately 10:35 A.M., Sgt. Lawson sprayed a one second burst of Freeze Plus P Chemical Agent into Inmate Mixon's facial area. Officer Ivey ordered Inmate Mixon to report to his cell door to be handcuffed.  Inmate Mixon complied with the order.  Officer Ivey placed handcuffs on Inmate Mixon to the rear.  Sgt. Lawson instructed [the cubical officer] to open Inmate Mixon's cell door.  Sgt. Lawson ordered Inmate Mixon to kneel down so that leg irons could be placed on him.  Inmate Mixon did not comply with the order.  Officer Daron Fayson ... placed Inmate Mixon on the floor using the stun shield, but did not activate the current [of the shield].  Officer Dexter Baldwin ... and Officer Steven Canty held Inmate Mixon by both legs while Officer Ivey placed leg irons on Inmate Mixon.  Inmate Mixon was escorted to the Segregation Unit Lobby and placed on the floor.  Inmate Mixon became very loud and hostile toward Officer Canty.  Inmate Mixon spat on Officer Canty and attempted to kick him.  Officer Canty grasped Inmate Mixon by the back of his head and shoulder area and sat down on Inmate Mixon's back.  Officer Fayson grasped Inmate Mixon by both legs.  Inmate Mixon pulled away from Officer Canty's grasp and struck his head on the corner of the wall, creating a laceration above Inmate Mixon's left eye.  At approximately 10:47 A.M., Nurses Sharon McKinnon and Susie Bush entered the Segregation Unit [to examine Mixon].  Nurse McKinnon cleaned Inmate Mixon's laceration and advised

> Captain Sconyers that Inmate Mixon needed to be taken to the Health Care Unit to be decontaminated and his laceration checked thoroughly. At approximately 11:05 A.M., Sgt. Lawson, Officer Ivey, and Officer McKinnis escorted Inmate Mixon to the Health Care Unit....

*Defendants' Exhibit 7 to the May 30, 2006 Special Report (Institutional Incident Report ECF-05-662) - Court Doc. No. 9-8* at 1-2. Several officers involved in the cell extraction provided statements which corroborated the facts set forth in the institutional incident report. *Defendants' Exhibit 7 to the May 30, 2006 Special Report - Court Doc. No. 9-8* at 5-6, 15-16. An independent internal investigation of this incident also confirmed the facts contained in the institutional incident report. *Defendants' Exhibit 7 to the May 30, 2006 Special Report (Investigation Sheet) - Court Doc. No. 9-8* at 7-8. Moreover, nurse Flowers provided an affidavit averring she did not at any time witness officer Canty or any other officers "assaulting Inmate Bernard Mixon with a baton, or any other device." *Defendants' Exhibit A to the June 27, 2006 Supplemental Special Report - Court Doc. No. 17-2* at 1.

Upon observation of Mixon in the health care unit, the treating nurse noted a small laceration above the inmate's left eye but no other injuries. *Defendants' Exhibit 7 to the May 30, 2006 Special Report - Court Doc. No. 9-8* at 6. Mixon refused examination and treatment of his injury, advising the nurse he was "alright [and] don't need no help." *Id.* The nurse informed Mixon she "would [apply] steri-strips to area [but he] refused" this procedure and stated "I just want it to heal on its own." *Id.*

2. The January 10, 2006 Incidents. On January 10, 2006 at approximately 3:40 p.m., defendant Pryor began to retrieve food trays from inmates confined in segregation.

*Defendants' Exhibit 6 to the May 30, 2006 Special Report - Court Doc. No. 9-7* at 1.  Pryor

opened the tray door of Mixon's cell, retrieved the food tray and attempted to close the tray

door.  *Id*.  At this time,

> ... Inmate Mixon laid his arm on the tray door and would not allow Officer
> Pryor to close the tray door.  Officer Pryor ordered Inmate Mixon several
> times to remove his arm.  Inmate Mixon did not comply with the orders given
> [to him].  Officer Pryor reached towards the tray door to close it, when
> Inmate Mixon attempted to grab Officer Pryor's arm.  Inmate Mixon missed
> Officer Pryor's arm, and his right hand hit somewhere on the tray door,
> causing a cut to his hand.  At approximately 3:42 PM, Officer Pryor reported
> the incident to Sgt. Lewis Hulett.  Sgt. Hulett and Officer Lewis Scott
> approached [Mixon's cell].  Sgt. Hulett questioned Inmate Mixon about the
> incident.  Inmate Mixon reported that Officer Pryor cut his hand with the
> food tray.  Sgt. Hulett [instructed that Mixon be escorted] to the Health Care
> Unit to be examined [and such occurred at approximately 3:45 PM].  At
> approximately 3:50 PM, Inmate Mixon was examined by Nurse Cynthia
> Garcia [and he thereafter] ... remained in the Health Care Unit Observation
> Cell pending disciplinary action....

*Defendants' Exhibit 6 to the May 30, 2006 Special Report (Institutional Incident Report*

*ECF-06-055) - Court Doc. No. 9-7* at 1-2.

Upon examination of Mixon, the treating nurse noted a "laceration to right thumb

... no discoloration [and inmate] able to move thumb."  *Defendants' Exhibit 6 to the May*

*30, 2006 Special Report - Court Doc. No. 9-7* at 4.  The nurse noted no other injuries and

applied a pressure dressing to Mixon's thumb.  *Id*.  No other treatment or medication was

deemed necessary.

Mixon thereupon engaged in a heated disagreement with the nurse concerning the

treatment provided and made a request to Sgt. Hulett for placement on suicide watch.

Correctional officers therefore placed Mixon in the medical observation cell to await evaluation by a mental health professional.  *Defendants' Exhibit 6 to the May 30, 2006 Special Report (Addendum to Institutional Incident Report ECF-06-055) - Court Doc. No. 9-7* at 3.  Pursuant to Mixon's request, Sgt. Hulett obtained a mental health consultation for Mixon and Brian Mitchell, a psychologist, entered the health care unit "and talked with inmate Mixon.  Inmate Mixon reported to Mr. Mitchell that he did not want to kill himself [but instead] wanted to see Lt. D. C. Wilson.  Mr. Mitchell advised Sgt. Hulett that he did not need to see Inmate Mixon any longer."  *Id*.  Hulett then ordered the door on the observation cell opened, entered the cell and ordered Mixon to exit the cell.

> Inmate Mixon stated, "I'm not going no f---ing where."  Sgt. Hulett ordered Inmate Mixon again to exit the cell.  Inmate Mixon refused to move.  Sgt. Hulett grasped Inmate Mixon's left arm and Sgt. Hager grasped Inmate Mixon's right arm and physically removed Inmate Mixon from the cell. Once on the sidewalk outside the Health Care Unit, Sgt. Hulett and Sgt. Hager released their grasp of Inmate Mixon's arms.  Inmate Mixon observed Capt. Jeffery Knox walking by the Gym.  Inmate Mixon yelled [to the Captain that he wanted to see him] and began to walk towards Capt. Knox. Officer Campbell grasped Inmate Mixon's right arm and ordered him to stop. Inmate Mixon [disobeyed this order and] continued towards Capt. Knox. Sgt. Hulett grasped Inmate Mixon's left arm to assist Officer Campbell. Inmate Mixon turned towards Sgt. Hulett and attempted to spit on him.  Sgt. Hulett placed his left hand behind Inmate Mixon's head and attempted to place Inmate Mixon on the ground.  Sgt. Hulett's hand slipped off Inmate Mixon's head.  Sgt. Hulett attempted to place his left hand behind Inmate Mixon's head again, when Sgt. Hulett's thumb entered Inmate Mixon's mouth.  Inmate Mixon began to vigorously bite down on Sgt. Hulett's thumb. Sgt. Hulett ordered Inmate Mixon several times to release his thumb.  Inmate Mixon [refused these orders and] continued to bit[e] down on Sgt. Hulett's thumb.  Sgt. Hulett and Officer Campbell placed Inmate Mixon on the ground at which time Inmate Mixon released his grasp on Sgt. Hulett's thumb.  [The officers then allowed Mixon to stand on his feet.]  Officer

Campbell and Sgt. Hager escorted Inmate Mixon back into the Health Care
Unit to be examined.  Sgt. Hulett [likewise] entered the Health Care Unit ...
[for examination and treatment of the injuries he suffered in this altercation
with Mixon].

*Defendants' Exhibit 6 to the May 30, 2006 Special Report (Addendum to Institutional
Incident Report ECF-06-055) - Court Doc. No. 9-7* at 3.  Officers Hager and Campbell
submitted statements regarding the above described incident and these statements fully
corroborate the facts contained in the institutional incident report.  *Defendants' Exhibit 6
to the May 30, 2006 Special Report - Court Doc. No. 9-7* at 9-10.  Specifically, in their
statements, both officers affirm that Mixon spit on Sgt. Hulett, bit Hulett's thumb and
refused several orders to release his bite on the officer which required that Mixon be placed
on the ground to effectuate release of Sgt. Hulett's thumb from his mouth.  *Id.*  An
independent internal investigation of this incident likewise confirmed the facts contained
in the institutional incident report.  *Defendants' Exhibit 6 to the May 30, 2006 Special
Report (Investigation Sheet) - Court Doc. No. 9-7* at 11-12.

Upon Mixon's arrival at the health care unit, Nurse Garcia "noted [a] contusion to
[left] forehead" of inmate.  *Defendants' Exhibit 6 to the May 30, 2006 Special Report -
Court Doc. No. 9-7* at 7.  The nurse cleansed the affected area, "applied ice to contusion"
and provided Motrin to Mixon.  *Id.*  Mixon then requested placement "on suicide watch."
*Id.* at 8.  Based on this request, mental health professionals ordered Mixon placed on
suicide watch and confined him in the safe cell of the health care unit.  *Id.*  As a result of
the altercation with Mixon, Sgt. Hulett suffered a large laceration to the inner portion of his

14

left thumb "and a small laceration on outer thumb with minimal bleeding.  Small scrapes noted on last three digits on right hand...."  *Id*. at 5.  Officer Campbell also suffered "a small laceration to 5th digit on [left] hand" in the struggle with Mixon.  *Id*. at 6.

Viewing the facts in a light most favorable to the plaintiff, the court concludes that Mixon fails to establish the use of excessive force as the record is devoid of evidence that the defendants used force "maliciously and sadistically" for the very purpose of causing harm.  Specifically, the undisputed facts of this case demonstrate that a need for the use of force existed during each incident because Mixon disobeyed several orders, confronted the respective defendant in a combative and hostile manner, threatened correctional officials, posed a threat to his own safety or that of the officers, and/or physically attacked the officers present.  Additionally, the relatively minor injuries suffered by Mixon are clearly indicative of a use of minimal force and reflect the type of injuries reasonably attendant to the actions necessary to obtain control of an inmate.  Thus, the extent of the injuries demonstrates that the force about which plaintiff complains was not used maliciously and sadistically.

In addition, the fact that each defendant immediately reported the incident to a supervisor and then ensured that Mixon received medical treatment within a few minutes of the specific altercation is another reason which supports the finding of a lack of malicious or sadistic conduct.  Also, Mixon does not claim that any of the defendants, in applying force, used threatening or abusive language.  *See Bozeman v. Orum*, 422 F.3d

1265, 1271 n.11 (11th Cir. 2005) (explaining that, although mere words are not determinative of bad faith on the part of correctional officers in their use of force, "threatening language as part of the totality of the circumstances can be relevant to what is constitutionally reasonable," and may be relevant in the determination of reasonable inferences which can be drawn regarding the officers' subjective state of mind). Moreover, unlike the inmate plaintiff in *Skrtich*, the defendants did not electrically stun Mixon, repeatedly seek to harm him or beat him unconscious, and he did not require medical treatment at an off-site hospital. After each incident, Mixon needed only minimal treatment from correctional medical personnel. Furthermore, to the extent that defendant Mosley was present during the cell extraction and failed to intervene, no constitutional violation occurred because defendant Canty did not use excessive force in removing Mixon from his cell. *See Skrtich*, 280 F.3d at 1301.

The record clearly demonstrates that the actions of each defendant were undertaken in their effort to obtain control of Mixon, defend themselves from assault by Mixon and restore discipline in the facility. Additionally, the officers did not subject Mixon to force once he posed no further threat to them or himself. Consequently, it is clear that there was a need for the use of force and the amount of force used was reasonable in light of the imminent threats presented by Mixon. The court therefore concludes that the officers did not act maliciously and sadistically in using force against Mixon during any of the challenged incidents and they are therefore entitled to summary judgment on the claims

lodged against them.

## B.  Deliberate Indifference to Safety - Warden Mosley

Mixon argues that defendant Mosley acted with deliberate indifference to his safety by allowing Sgt. Hulett to supervise his confinement.  *Plaintiff's June 15, 2006 Response - Court Doc. No. 15* at 1.   A correctional official may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's safety when the official knows the inmate faces "a substantial risk of serious harm" and with such knowledge disregards the risk by failing to take reasonable measures to abate it.  *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).  A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not 'respond[] reasonably to the risk.'  *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1982-83, 128 L.Ed.2d 811 (1994).  A plaintiff must also show that the constitutional violation caused his injuries."  *Marsh v. Butler County*, 268 F.3d 1014, 1028 (11th Cir. 2001) (en banc).

In *Farmer*, the Court identified both objective and subjective elements necessary to establish an Eighth Amendment violation.  With respect to the requisite objective elements, an inmate must first show "an objectively substantial risk of serious harm ... exist[ed]. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner."  *Marsh*, 268 F.3d 1028-1029.  As to the subjective elements, "the official must both be aware of facts from which

the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference....   The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'  ...  *[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment*." *Farmer*, 511 U.S. at 837-838 (emphasis added); *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same).  The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety....   It is *obduracy and wantonness, not inadvertence or error in good faith*, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock."  *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (emphasis added).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991)....   Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists - and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

18

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003). "The known risk of injury must be a strong likelihood, rather than a mere possibility before a [correctional official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and internal quotations omitted). As the foregoing makes clear, "[m]erely negligent failure to protect an inmate ... does not justify liability under section 1983...." *Id*.

Pursuant to these criteria, Mixon is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendant['s] deliberate indifference to that risk; and (3) causation[]" in order to survive summary judgment on his deliberate indifference claim against warden Mosley. *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995); *Farmer*, 511 U.S. at 837-838 (To circumvent entry of summary judgment on a properly supported motion, plaintiff must produce sufficient evidence which demonstrates (1) an objectively substantial risk of serious harm; (2) a subjective awareness of this risk on the part of the defendant; (3) the defendant responded to such risk in an objectively unreasonable manner; and (4) the actions/omissions of the defendant caused his injuries); *Marsh*, 268 F.3d at 1028-1029 (same).

The record is completely devoid of evidence that the altercation with Sgt. Hulett occurred due to deliberate indifference on the part of defendant Mosley. Mixon presents no evidence of an objectively substantial risk of serious harm nor is there any evidence demonstrating subjective awareness of a substantial risk of such harm by defendant

Mosley, each of which is a required element of the instant Eighth Amendment claim. "Plaintiff has failed to establish that the Defendant had a subjective awareness of a substantial risk of serious physical [harm] to Plaintiff; thus, Plaintiff has failed to establish a required element of this claim.  When viewing the evidence most favorably toward Plaintiff, a claim for deliberate indifference has not been established...." *Carter*, 352 F.3d at 1350 (footnote omitted).  Consequently, summary judgment is due to be granted in favor of defendant Mosley on Mixon's claim of deliberate indifference.

### C.  Criminal Prosecution

Mixon requests that criminal charges be initiated against the defendants for assault and battery.  This claim entitles Mixon to no relief as a "private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another."  *Linda R. S. v. Richard D.*, 410 U.S. 614, 619 (1973); *see also Leeke v. Timmerman*, 454 U.S. 83 (1981). Thus, the defendants are entitled to summary judgment on this claim.

### D.  Supplemental Jurisdiction

To the extent Mixon seeks relief from this court on pendent state law claims for assault and battery, he is entitled to no relief.  Review of any pendent state law claim is only appropriate upon exercise of this court's supplemental jurisdiction.  In the posture of this case, however, the court concludes that exercise of such jurisdiction is inappropriate.

> Two factors determine whether state law claims lacking an independent federal jurisdictional basis can be heard in federal court with a federal claim over which the court has jurisdiction.  To exercise pendent jurisdiction [or what is now identified as supplemental jurisdiction] over state law claims not

> otherwise cognizable in federal court, "the court must have jurisdiction over a substantial federal claim and the federal and state claims must derive from a 'common nucleus of operative fact.'" *Jackson v. Stinchcomb,* 635 F.2d 462, 470 (5th Cir.1981) (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). *See generally* C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction* § 3567 pp. 443-47 (1975).

*L.A. Draper and Son v. Wheelabrator Frye, Inc.*, 735 F.2d 414, 427 (11th Cir. 1984). The exercise of supplemental jurisdiction is completely discretionary. *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966). "If the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of the state claims." *L.A. Draper and Son*, 735 F.2d at 428. In view of this court's resolution of the federal claims presented by Mixon, any pendent state claims are due to be dismissed. *Gibbs*, 383 U.S. at 726 (if the federal claims are dismissed prior to trial, the state claims should be dismissed as well); *see also Ray v. Tennessee Valley Authority*, 677 F.2d 818 (11th Cir. 1982).

## III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendants' motion for summary judgment be GRANTED.

2. Judgment be GRANTED in favor of the defendants.

3. This case be dismissed with prejudice.

It is further

ORDERED that on or before March 26, 2009 the parties may file objections to this Recommendation. Any objections filed must clearly identify the findings in the Magistrate

Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc*., 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done, this 13th day of March, 2009.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE